**MARCONI WIRELESS TELEGRAPH CO. OF AMERICA v. DUFFY, Collector of Internal Revenue.**

(District Court, D. New Jersey.   May 31, 1921.)

**Internal revenue ☞19 (1)—Tax on shares of corporation as transferred held proper.**

Where plaintiff corporation, in furtherance of a consolidation, transferred assets to the R. corporation, in consideration of issuance by the R. Corporation of a certain number of shares of its stock to shareholders in plaintiff corporation, and such stock was issued and properly stamped, a further stamp tax, as in effect on a transfer from the plaintiff to its shareholders, was properly charged against plaintiff under Revenue Act 1918, subd. 4, Schedule A (Comp. St. Ann. Supp. 1919, § 6318p), taxing "right to subscribe for or to receive such shares."

At Law.   Action by the Marconi Wireless Telegraph Company against Charles V. Duffy, Collector of Internal Revenue.   On motion to strike the petition.   Sustained.

Griggs & Harding, of Paterson, N. J. (John W. Griggs, of Paterson, N. J., of counsel), for plaintiff.

Wayne Johnson, of Washington, D. C. (John M. Sternhagen, of New York City, of counsel), for defendant.

RELLSTAB, District Judge.   The plaintiff sues to recover $5,000 claimed to have been unlawfully exacted from it by the defendant, as stamp tax on certain issues of certificates of stock.   The defendant moves to strike out the petition.   The question thus raised is whether the transactions disclosed by the petition are subject to tax under the Revenue Act of 1918 (40 Stat. 1057, 1919 Supp. Comp. Stat. p. 1284), and calls for the interpretation of subdivision 4 of Schedule A of that act.

The transactions set out in the petition, in brief, are:  The plaintiff, for the purpose of consolidating its property and business with certain properties and businesses of the General Electric Company, contracted to transfer its assets, with minor exceptions, to the Radio Corporation of America (hereinafter called Radio), in exchange for 2,000,-000 shares each of Radio's preferred and common stock; that in the original agreement it was provided that "changes in form and procedure" were left to counsel of plaintiff and Radio, and that if they proposed "a definite method for the union of the two interests their recommendation * * * be carried out"; that before any of such stock had been issued to plaintiff "in pursuance of the reservation of authority to modify or change the said agreement" as plaintiff's board

of directors might propose, and upon their resolution so authorizing, it was agreed between plaintiff and Radio that Radio should issue its stock directly to such stockholders of plaintiff as desired to receive it, Radio to be credited as though the shares had been issued directly to plaintiff; that in accordance with such modified agreement Radio issued to sundry stockholders of plaintiff, who had surrendered their certificates of stock in the plaintiff company, Radio stock aggregating' 238,095 shares each of its preferred and common stock, attaching to such shares the revenue stamps required by law; and that subsequently plaintiff was required by defendant to pay an additional tax upon the shares so issued direct to plaintiff's stockholders, amounting to the sum of $5,000, the stamps for which, upon the defendant's directions, were affixed to plaintiff's minute book, and canceled by the defendant despite the plaintiff's protest.

The pertinent part of the Revenue Act under which this disputed tax was imposed is:

"Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares of certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents. * * * That in case of sale where the evidence of transfer is shown only by the books of the corporation the stamp shall be placed upon such books."

In considering the question at issue we must not ignore the substantial difference between a corporation and its stockholders. Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525; Peterson v. Chicago, Rock Island & Pac. Ry. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841; Lynch v. Hornby, 247 U. S. 339–344, 38 Sup. Ct. 543, 62 L. Ed. 1149; Eisner v. Macomber, 252 U. S. 189, 214, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. The property sold to Radio was the plaintiff's property, and could be sold only by it. To effect the sale the consent of the stockholders was necessary; but it, and not the stockholders, held the legal title, and it alone could vest such title in the purchaser. The stockholders eventually would share in the consideration of the sale, but this could be brought about only by means of dividends or similar methods of distribution. The stock issued by Radio to the plaintiff's stockholders was the consideration for the property sold to it by the plaintiff. Had the plaintiff received the stock, as seemingly was originally contemplated, and disposed of it, whether to its stockholders or to other parties, a tax such as was here imposed would have had to be paid. Undoubtedly it was within the power of plaintiff, upon obtaining the necessary authority, to direct Radio to issue the stock to its (plaintiff's) stockholders. But this authority—resolution of the plaintiff's board of directors—was nothing less than a transfer of plaintiff's rights to such shares of stock, and is covered by one of the quoted methods of transferring shares or cer-

tificates of stock taxable under subdivision 4, viz. a transfer of "rights to subscribe for or to receive such shares."

The case of McClain v. Fleshman, 106 F. 880, 46 C. C. A. 15, decided by the Circuit Court of Appeals of this circuit, is not, as contended by plaintiff, an authority for a different conclusion. In that case agreements to buy and sell stock on margin were considered in relation to the stamp schedule of the War Revenue Act of 1898. The memoranda evidencing the agreements to buy or sell had proper tax stamps attached thereto. These agreements did not call for or contemplate a delivery or resale of the stock. The transactions were purely speculative. The parties were to settle by paying the difference between the price agreed upon and the market price at the time of settlement, and the settlement was to be effected by the surrender of the agreements. The Commissioner of Internal Revenue contended, as appears from the court's opinion (106 Fed. 881, 46 C. C. A. 16), "that these settlements necessarily involved agreements to resell the stock"; that "new memoranda, bearing tax stamps, should have been issued"; and thereupon exacted the additional tax made the basis of that suit. The court held that these settlements did not involve agreements for a resale of the stock, and that no agreement to that effect could be inferred for the purpose of extending the provisions of the Revenue Act, so as to justify the additional tax.

That case differs radically from the instant one. In that case no transfer at all was contemplated or took place. In the present case the stockholders could not have received the stock without transfers from the plaintiff. Such transfers having been effected, the challenged tax was justified, and the stamps were properly affixed to the plaintiff's minute book, as it evidenced the transfer.

The motion is sustained.