## MINNESOTA MINING & MFG. CO. v. WILLCUTS, Collector of Internal Revenue.

### No. 2313.

District Court, D. Minnesota, Third Division.
Aug. 15, 1932.

Sanborn, Graves, & Andre and J. Neil Morton, all of St. Paul, Minn., for plaintiff.

M. W. Goldsworthy, Asst. U. S. Atty., of Washington, D. C., for defendant.

CANT, District Judge.

During a part of the year 1929, and for several years prior thereto, the plaintiff, a Minnesota corporation, and hereinafter so designated, was engaged in business in said state. A time came when it was thought advisable, not to change such business, or the ultimate ownership, or the management thereof, but that the convenient vehicle for carrying on its operations should be a Delaware corporation of the same number of shares of capital stock and authorized to take over the property of the Minnesota corporation and manage the affairs thereof. A voluntary committee was formed from among the stockholders of the Minnesota corporation, for the purpose of working out the details of such a plan, and carrying the same into execution. The plan as developed was agreed to by the requisite number of stockholders. This contemplated (1) the organization of the Delaware corporation; (2) the transfer of all the assets of the Minnesota corporation to the

new corporation to be formed; (3) as between the two corporations themselves, a proper agreement as to the consideration supporting such transfer; (4) and incidental to the foregoing, the protection of the individual rights of the various stockholders in the Minnesota corporation, so that on carrying out the plans referred to each such stockholder would be as well off, financially, as he was before. The committee appears to have acted in an all round capacity, and to have looked after the interests of the two corporations as such, and, separate and apart therefrom, of the individual rights of the stockholders as well. The change from the one corporation to the other could not have been made at all except at the will of the stockholders of the Minnesota corporation, and they were privileged to make such provision for the protection of their individual rights as they should see fit, and the method to be employed in effecting that result. To that end, the plan contemplated that stock in the Minnesota corporation should be surrendered by the holders thereof to that company for cancellation, and that through the agency of the voluntary committee, the holders thereof should receive equivalent stock in the Delaware corporation directly from that company.

The organization of the Delaware corporation and the transfer thereto of all assets theretofore belonging to the Minnesota corporation were duly consummated. As between the two corporations, and as a consideration for the transfer, the Delaware corporation assumed various liabilities and agreed to make certain payments. It also agreed to deliver to the Minnesota corporation one share of stock of the Delaware corporation for each share of stock in the Minnesota corporation which should not be delivered up by the holder thereof to the latter company for cancellation, if such shares there should be. All of this was specially provided in the formal agreement which was finally entered into between the two corporations. Such agreement made no provision for the delivery of stock by the Delaware corporation to, or for the benefit of, stockholders in the Minnesota corporation who should surrender their stock to that company for cancellation. That was taken care of in some other way as contemplated by the plan and as arranged by the voluntary committee. Under such arrangement, so far as we know, the Minnesota corporation never had any proprietary interest in such stock, and had no right, at any time, thereto, or to any control over the disposition of the same.

At the times here in question, the total outstanding stock of the Minnesota corporation amounted to 961,260 shares. Of this amount, under the plan hereinbefore referred to, 946,663 shares were surrendered for cancellation, and, in lieu thereof, under the direction of the voluntary committee, an equal number of shares in the Delaware corporation was issued and delivered to the several persons who had been holders of the surrendered stock. The tax on the issue of said stock as prescribed by Revenue Act 1926, title 8, Schedule A.(2), § 800 et seq. (26 USCA § 901, Schedule A.(2), was duly paid. Such new stock, so delivered, was without face value.

The transactions here in question were completed in September, 1929. Thereafter, and assuming to act under the authority of Revenue Act 1926, title 8, Schedule A.(3), 26 USCA § 901, Schedule A.(3), defendant, in his official capacity, as an officer of the government, demanded from plaintiff the payment of a tax of two cents per share on account of the 946,663 shares of the Delaware corporation which had been issued and delivered as aforesaid. The demand of the collector was complied with, and the sum of $18,933.26 was paid to him by plaintiff under protest. This action has been brought to recover the amount so paid, on the ground that the tax so levied and collected was not authorized by law.

To warrant the levy and collection of the tax, the right so to do, under the law, must be reasonably clear. The language of the statute upon which defendant relies as a warrant for the collection of the tax in question, in so far as it involves a description of the property or transactions to be reached, reads as follows: "On all sales * * * or transfers of legal title to shares or certificates of stock, * * * or to rights to subscribe for or to receive such shares or certificates," etc. Revenue Act 1926, title 8, Schedule A.(3), supra. The claim of the defendant is that under the facts of this case, as a matter of legal right, plaintiff became entitled to receive from the Delaware corporation 946,663 shares of the stock of that company, that it transferred such legal right to the various individuals, to whom, thereafter, certificates covering such stock were actually delivered, and that on such transfer the right to levy and collect the tax in question became firmly established.

The distinction between the corporation and its stockholders must be kept in mind. In this case, under the method adopted and

carried out, it is reasonably clear that the right to receive the stock in question was always in the individual stockholders, and was never in the plaintiff corporation. Quite clearly that was the plan, and quite clearly everyone interested in the matter had a right to so understand, and the stockholders in the Minnesota corporation in reliance thereon had a right to withhold or to yield their assent to such plan in accordance with their justifiable understanding thereof.

In connection with the stock in question, there was a single movement only. That was directly from the corporation issuing the certificates, the Delaware corporation, to the individuals who were entitled thereto under the arrangement made by the voluntary committee. There was no vesting in the Minnesota corporation, as such, of any right to, or interest in, or power of disposition as to, the stock in question. There were no "sales * * * or transfers of legal title to shares or certificates of stock * * * or of legal title to rights to subscribe for or to receive such shares or certificates," by the Minnesota company. The latter had no such legal title and no such rights. It could not make any such sales or transfers to others, and it made no attempt so to do. The tax, therefore, was unwarranted.

The case of Marconi Wireless Telegraph Company of America v. Duffy (D. C.) 273 F. 197, presents features which, in respect to points with which we are here mainly concerned, differ widely from the case at bar. The Marconi Company, being the owner of certain property, sold the same to the Radio Corporation, and agreed to accept in payment therefor a certain number of shares of the purchasing corporation. It was an ordinary bargain and sale transaction. If consummated in accordance with the original terms thereof, the Radio Corporation would have become the legal owner of the property sold, and the Marconi Company would have become the legal owner of the shares of stock. It had the legal right to become such owner and to receive such stock. The latter company might have held such shares the same as it held other property, or it could have sold the same at will. The transaction, however, was a corporate one. Such rights as were created by the original contract were corporate rights. The individual stockholders, as such, had nothing to do directly therewith. It was finally arranged that, instead of the stock in the Radio Corporation being transferred to the Marconi Company, as originally planned, the same was distributed directly to the respective shareholders of the latter company in proportionate amounts which were agreed to. Such sale or transfer by the Marconi Company to its various stockholders of its legal right "to receive such shares or certificates" gave ground for the view that the case came within the terms of the statute under which the assessment in the case at bar was made, and it was so held.

In the various other cases relied upon by defendant, it will be found, usually, that the corporation, as such, acquired or held certain rights, and that, with such rights clearly vested, it sold, transferred, or relinquished the same to individual stockholders. In the case at bar, there was no such setting. The parties were dealing with themselves, and, in a narrowly limited group, with each other. Within such narrow limits, certain mutual readjustments were made. The circumstances were such that it is hardly likely that they came within the legislative intent for the imposition of a tax, even if the corporation had been vested with some limited control over the stock in question. But it had no such control. Pursuant to an understanding to that effect, the stock was delivered directly to the individuals entitled thereto, without any intervention on the part of the plaintiff company, and, as a consideration therefor, such stockholders had surrendered up for cancellation other stock held individually by them.

The court gives no specific indication of its views as to the constitutionality of the law in question as applied to facts such as we have here, nor does it intend to indicate that the point is without merit.