## SHREVEPORT–EL DORADO PIPE LINE CO., Inc., v. McGRAWL.

### No. 6801.

Circuit Court of Appeals, Fifth Circuit.
Feb. 11, 1933.

S. L. Herold, of Shreveport, La., for appellant.

E. E. Talbot, U. S. Atty., and Jno. W. Harrell, Asst. U. S. Atty., both of New Orleans, La., and Wright Matthews and Frederick W. Dewart, Sp. Attys., Bureau of Internal Revenue, both of Washington, D. C., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By the judgment appealed from, which was rendered on an agreed statement of facts, a jury being waived, the Shreveport Producing & Refining Company, Inc., a Louisiana corporation (herein referred to as the Louisiana Corporation), was held to be liable for the sum of $20,000, exacted of and paid by it in 1928 as a documentary stamp tax assessed under title 8, § 800, Schedule A, subd. 3, of the Revenue Act of 1926, 44 Stat. 99, 101 (26 USCA § 901, Schedule A, subd. 3). The Shreveport Producing & Refining Company was a Delaware corporation (herein referred to as the Delaware corporation), organized in 1920, with an issued capital stock of 1,000,000 shares of $10 par value

each, was authorized to do business in Louisiana, and was engaged in business in that state. Pursuant to action taken at meetings of the stockholders of the Delaware corporation, the Louisiana corporation was organized in 1928, with an authorized capital of 1,000,000 shares of stock without par value, for the purpose of exchanging all of its capital stock for the entire assets, properties, and franchises of the Delaware corporation and assuming the liabilities thereof; each stockholder of the Delaware corporation to receive the same number of shares in the Louisiana corporation as he held in the Delaware corporation; and the Delaware corporation was dissolved after it had transferred all its assets, franchises, and liabilities to the Louisiana corporation, which transfer was made pursuant to a resolution adopted at a meeting of the stockholders of the Delaware corporation which stated that such transfer was for and in consideration of all the capital stock of the Louisiana corporation, being 1,000,000 shares without par value, and the assumption by the Louisiana corporation of all the liabilities of the Delaware corporation. That resolution also provided for the issue of the Louisiana corporation's stock direct to the stockholders of the Delaware corporation; each such stockholder to receive the same number of shares in the Louisiana Corporation as he then held in the Delaware corporation. That provision was complied with.

Schedule A referred to in section 800 of title 8 of the Revenue Act of 1926 (subdivisions 2, 3 [26 USCA § 901, Schedule A, subds. 2, 3]), levying on things mentioned or described in that schedule the several taxes specified therein, contains the following:

"2. Capital stock, issued: On each original issue, whether on organization or reorganization, of certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, on each $100 of face value or fraction thereof, 5 cents: Provided, That where a certificate is issued without face value, the tax shall be 5 cents per share, unless the actual value is in excess of $100 per share, in which case the tax shall be 5 cents on each $100 of actual value or fraction thereof, or unless the actual value is less than $100 per share, in which case the tax shall be 1 cent on each $20 of actual value, or fraction thereof.

"The stamps representing the tax imposed by this subdivision shall be attached to the stock books and not to the certificates issued.

"3. Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share."

 This case involves no question as to what is taxable under the above set out subdivision 2 of Schedule A. Subdivision 3 of that schedule is relied on to sustain the exaction which was brought into question by the suit. It appears from the language of the last-mentioned provision, including its caption, "Capital stock, sales or transfers," that it covers only acts or transactions by which an interest in a corporation or its property, or a right to acquire such interest, passes from one owner to another, and does not apply to acts or transactions which are not means of effecting a change of ownership or of enabling the accomplishment of that result. There is no passage or transfer of the title or ownership of a corporate interest where, on the exchange of stock in one corporation for stock in another in carrying out a plan of reorganization, the holder, after the exchange, has substantially the same interest which he had before.

Upon the completion of the organization of the Louisiana corporation, each of its stockholders had the same share or proportional part in the enterprise which he had while the Delaware corporation was in existence; no change of substance being effected by substituting shares of no par value for the same number of shares having a nominal par value of $10 each. The interest represented by a share of stock in the Louisiana corporation was the same as the stockholder had before, except that it was in a Louisiana corporation, instead of a Delaware corporation. If the successor of the Delaware corporation also had been a Delaware corporation, no real change or transfer of interest would have been effected by exchanging the stock of one corporation for that of the other, as the change of corporate identity would have been merely technical and nominal, and each stockholder would have retained the same essential rights in reference to the assets. Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520. In the case of Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 577, 69 L. Ed. 1079, the court concluded that an exchange of common stock and 7 per cent. voting preferred stock of a New Jersey corporation for common stock and 6 per cent. nonvoting preferred stock of a Delaware corporation was an exchange of different interests, not an exchange of certificates representing the same interests. It appears from the opinion that one of the grounds relied on to support that conclusion was that, because a corporation organized under the laws of Delaware does not have the same rights and powers as one organized under the laws of New Jersey, both the common and the preferred stock of the Delaware corporation was an essentially different thing from stock of the same general class in the New Jersey corporation. It also appears from that opinion that other differences, substantial in character, between the exchanged stocks supported the conclusion reached; those differences being indicated by the statements: "A 6 per cent. nonvoting preferred stock is an essentially different thing from a 7 per cent. voting preferred stock. A common stock subject to the priority of $20,000,000 preferred and a $1,200,000 annual dividend charge is an essentially different thing from a common stock subject only to $15,000,000 preferred and a $1,050,000 annual dividend charge."

While the last-mentioned case was pending the Revenue Act of 1924 was enacted. The term "reorganization," as used in specified sections of the part of that act which dealt with the subject of income taxes, was defined in section 203 (h) (1) of that act (43 Stat. 257), which section was carried forward into the Revenue Act of 1926, 26 USCA § 934 (h) (1). The word "reorganization," as used in a specified section, referred to such a one as involves the exchange of their shares by stockholders for other shares of different issues. Under the quoted definition, "a mere change in identity, form, or place of organization, however effected," is a reorganization. The enactment of the just quoted provision evidences a legislative adoption or creation of a rule to the effect that a mere change in identity, or of place of organization, of a corporation, effects a reorganization of the corporation which is the subject of such change, not the creation of

a new and substantially different corporation. That provision warrants the recognition of the absence of any real change in the rights of stockholders where the only change is the creation of a new corporation, technically a distinct legal entity, to take over the properties and liabilities of the one previously existing. Pioneer Pole & Shaft Co. v. Commissioner (C. C. A.) 55 F.(2d) 861. It follows that in case of such a change, unaccompanied by other change, though the corporation's stockholders, for its stock which they held before the change was effected, receive, collectively and severally, share for share, stock of the same class issued by the changed corporation, they retain the same essential rights in respect of the assets; there being no transfer or passage to them of any corporate interest, or a right to acquire such interest, which was not owned by them before the change occurred.

The language of subdivision 2 of Schedule A, above set out, shows that the tax therein described was payable on each original issue, whether on organization or reorganization, of certificates mentioned. Under that provision it is immaterial that the stock certificates issued on a reorganization of a corporation represent the identical interests which were represented by certificates which were issued and outstanding prior to the reorganization. The immediately succeeding subdivision of Schedule A, subdivision 3, above set out, contains nothing which indicates that the tax therein provided for was intended to be payable where, on the reorganization of a corporation by a mere change in identity and place of organization, stock of the corporation before it was reorganized was exchanged, share for share, for stock of the same kind issued by the corporation as reorganized; the assets and liabilities of the corporation remaining unchanged. The language used not indicating that the tax was intended to be payable where, after the consummation of a reorganization, the stockholders have substantially the same interest in the enterprise which they had before, it is not to be inferred that a different result was intended when, in order to comply with technical requirements, the corporation as it was before the reorganization, as the

legal entity entitled to the stock which was the consideration for the sale and transfer of its assets, by acquiescing in such an exchange of stock certificates as the one now in question, impliedly recognizes the right of its stockholders to receive, share for share, the stock the issue of which is an incident of the reorganization. Whatever forms are used in effecting a corporate reorganization, there is no real transfer of a corporate interest or of a right to acquire it where, after the consummation of the reorganization, each stockholder legally owns substantially the same corporate interest which he owned before.

■■ "In statutes levying taxes the literal meaning of the words employed is most important for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." United States v. Merriam, 263 U. S. 179, 187, 44 S. Ct. 69, 71, 68 L. Ed. 240, 29 A. L. R. 1547. The ordinary function of each of the enumerated subjects of the tax now in question is to effect, to evidence, or to provide means of bringing about, a change of ownership of an interest in a corporation or its property. To say the least, the language used does not clearly import an intention to give to such an occurrence as the one in question the effect of creating liability for the described tax. We think it reasonably may be inferred that that language is inconsistent with the existence of an intention to make liability for the tax a result of a transaction which is not an incident of a change of ownership of an interest in a corporation or its property. We conclude that the language of the statute providing for the tax is such as to justify a doubt as to liability for it being or not being a result of such a transaction as the one now in question, and that that doubt should be resolved in favor of the taxpayer.

The judgment is reversed, and the cause is remanded, with direction that judgment be rendered for the amount sued for in favor of the plaintiff, the appellant here, and that the prayer of the defendant, appellee here, for the issuance of a certificate of probable cause be granted.

Reversed.