## GEORGE A. HORMEL & CO. v. UNITED STATES.
### No. 2635.

District Court, D. Minnesota, Third Division.
March 12, 1935.

624

Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., for plaintiff.

George F. Sullivan, U. S. Atty., of St. Paul, Minn.

NORDBYE, District Judge.

This matter was submitted on a stipulation of facts. There is but one issue to be determined; namely, the right of the defendant to tax a transaction which it contends was a "transfer of a right to receive shares or certificates of stock as provided for in section 800 of the Revenue Act of 1926, 26 USCA § 901, Schedule A–3." Briefly, the facts as disclosed by the stipulation may be stated as follows:

George A. Hormel & Co., a Minnesota corporation, on or about September 1, 1928, caused a notice to be sent to its stockholders of a corporate meeting on September 18, 1928, for the purpose of considering a plan of reorganization. Attached to such notice was a resolution of the board of directors of the company stating, among other things, that, in order to maintain the present rights and values of the holders of the stock in the company, it was deemed expedient to organize a new corporation under the laws of another state, to which all the property rights, privileges, and franchises of the Minnesota corporation could be transferred pursuant to a plan of reorganization. On the 18th day of September, 1928, the stockholders of the Minnesota corporation met and duly considered the plan of reorganization that was submitted. The stockholders passed a resolution approving and accepting the plan. Inter alia, the plan provided for the organization of a new corporation under the laws of Delaware to take over the assets of the Minnesota corporation; transfer by the Minnesota corporation of all its assets to the Delaware corporation in exchange for all the capital stock of the Delaware corporation; and distribution of the common stock of the Delaware corporation to holders of the common stock of the Minnesota corporation, either in exchange or distribution without surrender of any stock.

It was further provided that the Minnesota corporation might purchase stock of the Delaware corporation from the distributees, or any one or more of them, and that the preferred stock of the Delaware corporation should be distributed to the holders of the preferred stock of the Minnesota corporation. Apparently the value of the stock was not to be relatively changed. The stockholders, in approving the plan, authorized the officers and directors to transfer all of the assets to the Delaware corporation "in consideration of the issuance of all of the common and preferred capital stock of that company." Thereafter the board of directors of the Minnesota corporation adopted a resolution which provided:

"Whereas, in such reorganization this corporation will receive all the capital stock of said Delaware corporation immediately to be issued,

"Now, therefore, be it resolved that as part of such plan of reorganization the officers hereof require such Delaware corporation to issue to it in exchange for its net assets as of the close of business as of October 27, 1928, the following shares of its capital stock. * * *"

The resolution further provided:

"Be it resolved that the common stock of the Delaware corporation to be received by this corporation pursuant to its plan of reorganization, be distributed to the holders of Class A common stock of this corporation as the same appear of record at the close of business on October 27, 1928. * * *"

Thereafter, on September 21, 1928, the Delaware corporation passed a resolution wherein it provided, among other things: " * * * This corporation will acquire the net assets of Geo. A. Hormel & Company; that in exchange therefor there be issued to the order of said Minnesota corporation the following shares of capital stock of this corporation. * * *"

On October 27, 1928, the Delaware corporation passed a resolution which provided in part as follows: " * * * That subsequent to the transfer to this corporation of certain assets of said Minnesota corporation, in consideration of this corporation agreeing to assume and pay the liabilities of said Minnesota corporation, thereupon this corporation acquire and receive all the remaining assets of said Minnesota corporation of every kind, nature and description whatsoever and wheresoever located, real, personal and mixed, tangible and intangible, and the issuance of fully paid and non-assessable stock of this corporation in consideration therefor of the classes and in the amounts heretofore agreed upon between the two corporations, is hereby authorized, ratified, approved and confirmed."

In pursuance of the resolution of the two corporations, the Delaware corporation issued its stock in consideration for the transfer of the assets of the Minnesota corporation direct to the stockholders of the latter company. The issuance tax for the stock issued by the Delaware corporation was paid by the Delaware corporation, but, in addition, the Commissioner of Internal Revenue determined that the Minnesota corporation, by the plan or proposal, had the right to receive the stock of the Delaware corporation as a consideration for the transfer of its assets, and that by the plan adopted the Minnesota corporation transferred this right to receive the stock to the Minnesota stockholders, and as a transfer of such right it was liable for the tax of 2 cents a share on the stock so issued. The tax in the sum of $8,897.32 was so levied, assessed, and paid under protest. The tax was apparently paid by the Delaware corporation for and on behalf of the Minnesota corporation, and evidently it is conceded that, if the tax was erroneously exacted, the plaintiff is entitled to a refund.

Defendant contends that liability exists for the tax under the provisions of the section above cited, which provides in part as follows: "On all * * * transfers of legal title to shares or certificates of stock * * * or to rights * * * to receive such shares or certificates * * * whether entitling the holder in any manner to the benefit of such stock * * * or rights, or not * * * two cents * * * on each share. * * *" Revenue Act 1926, tit. 8 (§ 800 et seq.) Schedule A (3), 26 USCA § 901, Schedule A (3).

Plaintiff contends that the transaction was a mere reorganization of the Minnesota corporation, and in effect an exchange by its stockholders of their stock for the Delaware corporation stock, which represented substantially the same interest in the transferred assets which they owned before the transfer. It is also urged that there was no change in the officers or management, nor any change of stockholders, and that their rights were in all respects the same.

The statute in question as applied to similar transactions has been considered by the courts in a number of cases, and there is an apparent conflict in the authorities. One senses a hesitancy on the part of some courts to apply what seems to be the plain intendment of the statute. It is recognized that the statute is sweeping in its character and applies to a varied type of transfers and sales of stock and rights to stock. It is elementary that one cannot read into the statute any exceptions or exemptions merely because the sales or transfers may be termed technical or formal. Apparently Congress did recognize that certain types of sales and transfers should not be subject to the tax, and it will be observed that certain exceptions are specifically noted; namely: "That it is not intended by this chapter to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, nor upon the delivery or transfer for such purpose of certificates so deposited, nor upon mere loans of stock nor upon the return of stock so loaned; Provided, further, That the tax shall not be imposed upon deliveries or transfers to a broker for sale, nor upon deliveries or transfers by a broker to a customer for whom and upon whose order he has purchased same."

The nature of the exemptions above quoted tends to emphasize the intention of Congress to exact a tax on all transfers and sales of stock or rights to stock, not only in the realm of barter and sale, but also all other transfers whether formal or otherwise. It will not suffice to urge that the sole purpose of the organization of the Delaware corporation and the transfer of the property by the Minnesota corporation was merely to provide for a continuation of the business without any change in the stockholders or their relative interests. A reorganization of this type and the transfer of stock from the new to the old corporation

in consideration of the transfer of the assets might well have been exempted, but the language of the statute is unambiguous. The statute states that the transfer of a right to receive certificates of shares of stock is taxable. There is nothing obscure or doubtful about the language employed. Courts must construe a statute literally, and, where there is a plain statement by the lawmaking body, the courts are not at liberty to depart from it, even though it would appear that the construction adopted may result in an apparent hardship to the taxpayer.

"If the words and phrases of a statute are not obscure or ambiguous, its meaning and the intention of the legislature must be determined from the language employed, and where there is no ambiguity in the words, there is no room for construction." Black on Interpretation of Laws (2d Ed.) p. 141.

In Crooks v. Harrelson, 282 U. S. 55, page 59, 51 S. Ct. 49, 50, 75 L. Ed. 156, the court was considering an estate tax question, and stated:

"It is urged, however, that if the literal meaning of the statute be as indicated above, that meaning should be rejected as leading to absurd results, and a construction adopted in harmony with what is thought to be the spirit and purpose of the act in order to give effect to the intent of Congress. The principle sought to be applied is that followed by this court in Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; but a consideration of what is there said will disclose that the principle is to be applied to override the literal terms of a statute only under rare and exceptional circumstances. The illustrative cases cited in the opinion demonstrate that, to justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense. Compare Pirie v. Chicago Title & Trust Company, 182 U. S. 438, 451, 452, 21 S. Ct. 906, 45 L. Ed. 1171. And there must be something to make plain the intent of Congress that the letter of the statute is not to prevail. Treat v. White, 181 U. S. 264, 268, 21 S. Ct. 611, 45 L. Ed. 853.

"Courts have sometimes exercised a high decree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. Monson v. Chester, 22 Pick. (Mass.) 385, 387. It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts. See In re Alma Spinning Company, L. R. 16 Ch. Div. 681, 686; King v. Commissioner, 5 A. & E. 804, 816; Abley v. Dale, L. J. (1851) N. S. Pt. 2, vol. 20, 233, 235. And see generally Chung Fook v. White, 264 U. S. 443, 445, 44 S. Ct. 361, 68 L. Ed. 781; Commr. of Immigration v. Gottlieb, 265 U. S. 310, 313, 44 S. Ct. 528, 68 L. Ed. 1031.

"In support of the claim that a literal construction is not admissible, it is said that by other provisions of section 402 certain interests in real property, such as dower, etc., are made subject to the tax without regard to the conditions set forth in subdivision (a), and that this results in an incongruity amounting to an absurdity. But unless the Constitution be violated, Congress may select the subjects of taxation and qualify them differently as it sees fit; and if it does so in plain terms, as it has done here, it is not within the province of the court to modify the law by construction. In any event, conceding that the conditions assailed have produced the incongruous results complained of, they fall far short of that degree of absurdity contemplated by the Holy Trinity Church Case, or by any other decision of this court."

▉ It is generally recognized that a corporation and its stockholders are separate and distinct in tax matters. Concededly, a stockholder cannot convey or withdraw any part of the corporate assets. He has merely an indivisible interest in the entire property belonging to the corporation. The reorganization plan of the Minnesota corporation, by reason of the fundamental principles of corporate powers, was necessarily consummated by that company as distinguished from its stockholders. The latter could authorize and approve the plan, but the transfer of the assets and the receipt of the consideration was a corporate matter. This

was clearly recognized and followed in the various resolutions that were adopted in furtherance of the so-called plan. The consideration of the transfer of the assets from the Minnesota corporation to the Delaware corporation was the issuance of all the common and preferred stock. The right to receive this consideration vested in the Minnesota corporation, and no one else. True, the Minnesota corporation might transfer this right to its stockholders, as it did, and avoid a formal transfer of the stock from the Minnesota corporation to the stockholders. But one exalts the form over substance if the direct transfer of the stock from the Delaware corporation to the old stockholders is held to preclude the government from construing the entire transaction as a transfer by the Minnesota corporation of its right to receive the shares. The Delaware corporation could not transfer the stock direct to the stockholders without the acquiescence and consent of the Minnesota corporation, and, when the plan of direct transfer was consented to by the Minnesota corporation, it thereby transferred its right to receive the stock and became amenable to the tax under the statute.

The court in Shreveport-El Dorado Pipe Line Co. v. McGrawl (C. C. A.) 63 F. (2d) 202, concluded that Congress did not intend to tax a transfer of stock, or the transfer of right to stock, which may take place in furtherance of a reorganization plan where the transactions do not effect a change of ownership. But there is no provision or implication in the act whereby the right to tax is limited or restricted to any designated type of transfer. It cannot be urged that Congress does not have the right to tax a transfer of stock or rights to stock in a reorganization matter, as well as a transfer in a consolidation, for instance. In fact, Schedule A (2) of the act, 26 USCA § 901, Schedule A (2), specifically requires a tax on each original issue of shares of stock, whether on organization or reorganization. There is no particular difference or distinction between the transfer of rights to stock which may occur in a merger or consolidation and the transfer that may take place where a corporation is organized under the laws of another state to take over the assets under a plan of reorganization. True, there may be an element of barter and sale, so to speak, in a consolidation, and the receipt by the stockholder of a different interest than that possessed prior to the consolidation; nevertheless, there is nothing in the

act which justifies the application of the statute to one transaction and not to the other. The fact that a different interest or holding is involved does not affect the ultimate question of the right of the government to tax a transfer of stock. Unless Congress has made or implied a distinction, the courts cannot do so. The statute assumes to tax transfers of stock or rights to stock, and is entirely silent as to any distinction that should be made between transfers involving changes in stock ownership and transfers made as a part of a reorganization plan. It may be that the act is entirely too comprehensive and sweeping. The construction of its unambiguous provisions may lead to impositions of an onerous and burdensome tax, which, in light of the issue tax provided for in Schedule A (2), seems to invoke a hardship, but the court is powerless to avoid the situation, and manifestly cannot add to the text certain exceptions and exemptions which Congress did not see fit to add. True, in a case of doubt, the construction should be in favor of the taxpayer, but in the instant case the doubt arises on account of the apparent injustice in imposing additional burdens upon a reorganized corporation, and not from the words of the statute. It is significant that all courts, save in the case of Shreveport-El Dorado Pipe Line Co. v. McGrawl, recognize that the tax must be paid if the old corporation actually transferred the rights to the shares. Marconi Wireless Telegraph Co. v. Duffy (D. C.) 273 F. 197; Minnesota Mining & Mfg. Co. v. Willcuts (D. C.) 2 F. Supp. 789; Westmoreland Coal Co. v. McLaughlin (D. C.) 8 F. Supp. 963; United States of America v. Brown Fence & Wire Company (D. C., N. D. Ohio, E. D.) 9 F. Supp. 1008, decided January 18, 1935. But the following cases assume to find the statute inapplicable to the particular form which was adopted by the particular plan of reorganization under consideration. Minnesota Mining & Mfg. Co. v. Willcuts, supra; Westmoreland Coal Co. v. McLaughlin, supra.

Without attempting to discuss or distinguish the decisions, it must be evident that any shortcut adopted by a corporation in consummating the plan cannot defeat the ultimate right of the government to exact the tax. If it is conceded that the tax would have to be paid in the event the Minnesota corporation herein had formally transferred the right to receive the stock to the individual stockholders, it necessarily follows that

the plan or scheme adopted herein does not escape the tax. A literal construction of the statute will permit no other conclusion, and, if the court is bound to adhere to the words of the statute, the defendant must be sustained in its collection of the tax.