AMERICAN GAS MACHINE CO., Inc., v. WILLCUTS et al.

No. 10719.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1937.

John F. D. Meighen, of Albert Lea, Minn. (Meighen, Knudson & Sturtz, of Albert Lea, Minn., on the brief), for appellant.

Lester L. Gibson, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., and George F. Sullivan, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for appellees.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from a judgment of the District Court against the appellant in an action brought by it to recover from L. M. Willcuts, collector of internal revenue, the sum of $1,726.20 documentary stamp taxes paid under protest in 1930. By order of this court the personal representatives of L. M. Willcuts, now deceased, have been substituted as parties appellees.

Appellees have moved to dismiss the appeal on two grounds: (a) Because the appeal was docketed and the record filed after the expiration of the return date of the citation without appellant's having obtained an enlargement of the period of forty days from the date of the citation, as provided in rule 26 of this court; and (b) because the bill of exceptions certified to this court is on its face a nullity, in that it was settled by the trial judge after the expiration of the term in which the judgment was entered.

The first ground of the motion is predicated upon the fact that judgment was entered in the trial court on February 28, 1936, while the case was not docketed nor the transcript filed in this court until July 10, 1936. The citation was dated May 18, 1936, and was returnable under the rule of this court in forty days. The clerk of the trial court certified to the transcript of the record on June 25, 1936. It was promptly forwarded to the clerk of this court and received at his office June 26, 1936. Appeal bond was filed May 18, 1936. Because of the absence of the attorney for the appellant from his office he did not learn that a letter dated June 26, 1936, had come from the clerk of this court asking for a deposit of $35. A draft was then immediately obtained and forwarded to the clerk on July 9, 1936, and received on July 10, 1936. The transcript was filed at once and the appeal docketed. The record was printed and copies mailed by the clerk to the parties on July 29, 1936. The motion to dismiss was not made until August 12, 1936.

It is clear that the rule was not strictly complied with, nevertheless the first ground of the motion must be denied because it was not made before the transcript was actually filed and the appeal docketed. West Chicago St. R. Co. v. Ellsworth (C.C.A.7) 77 F. 664; Owings v. Tiernan, 10 Pet. 24, 9 L.Ed. 333; The Kawailani (C.C.A.9) 128 F. 879; Altenberg v. Grant (C.C.A.6) 83 F. 980; Andrews v. Thum (C.C.A.1) 64 F. 149; Witte v. Franklin Fire Insurance Co. (C.C.A.8) 46 F.(2d) 894; McMillan Contracting Co. v. Abernathy (C.C.A.8) 284 F. 354.

The second ground of the motion is in substance a motion to strike the bill of exceptions rather than a motion to dismiss the appeal. It will be so treated. This division of the motion is based upon the fact that the judgment of February 28, 1936, from which the appeal was taken, was entered during the November 1935 term of the District Court, and the bill of exceptions was presented to, signed, settled, and allowed by the trial judge on May 21, 1936, at the succeeding term of the court at St. Paul, Minn., commencing on the "first Tuesday in April," 1936. 28 U.S.C. § 169 (28 U.S.C.A. § 169).

Rule 25 of the District Court provided: "For the purpose of taking any action

which ordinarily must be taken during the term of court in any division, at which final judgment, decree, or final order in any action or proceeding, civil or criminal, shall be entered, such term shall be considered as extended for the period of seven months from the date of the entry of the judgment, decree, or final order in such action or proceeding; and throughout such period, jurisdiction of such case for all such purposes shall be reserved."

This rule was not in the printed transcript nor in the judge's certificate to the bill of exceptions. The bill of exceptions was not settled, therefore, in time, unless this court may take judicial notice of the rules of the District Court. If the foregoing rule be applicable, the appeal was perfected within the period therein provided.

We find it unnecessary to determine the question thus presented, because even in the absence of a bill of exceptions this court will review the primary record. Huffman v. Baldwin (C.C.A.8) 82.F.(2d) 5. The facts in the instant case were agreed to by stipulation entered of record. They, therefore, are a part of the primary record and may be considered on appeal. United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551; Domenech v. Verges (C.C.A.1) 69 F.(2d) 714.

The motion to dismiss the appeal must therefore be denied.

Turning to the merits, the tax involved in the suit represents a documentary tax of two cents a share upon 86,310 shares of the capital stock of the American Gas Machinery Company, Inc., a Delaware corporation, for the alleged transfer by the American Gas Machine Company, Inc., a Minnesota corporation, to its stockholders of the right to receive said shares.

The right to collect the stamp taxes in controversy was based upon the provisions of Schedule A (3) of section 800 et seq. of the Revenue Act of 1926, c. 27, 44 Stat. 9, 99, 101, the pertinent part of which reads: "Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share."

The facts out of which the dispute arises were stipulated. In so far as they are material, they may be briefly stated.

American Gas Machine Company, Inc., was a Minnesota manufacturing corporation. In 1928 nine of its shareholders who owned a controlling interest and who included the directors and officers of the corporation concluded that it was advisable to change its charter from Minnesota to Delaware. They accordingly formulated a plan which contemplated:

"(a) Forming a Delaware corporation to take over and continue the business of the Minnesota corporation;

"(b) Without change in officers, directors or shareholders and without change in the proportionate interest of each shareholder;

"(c) Turning over to the Delaware corporation all assets and liabilities of the Minnesota corporation;

"(d) The dissolution of the Minnesota corporation;

"(e) The exchange by each shareholder of one share of common stock of the Minnesota corporation for forty-five shares of the no par value common stock of the Delaware corporation;

"(f) Unanimous consent of all shareholders;

"(g) Title to their old shares to remain in the shareholders until delivery of the new shares to them;

"(h) No change in relative holdings of shareholders, no addition or subtraction of capital, and no new shareholders;

"(i) Execution and delivery of the appropriate documents."

The plan so contemplated was carried into effect by appropriate proceedings. A new corporation having the same name as the old was organized under the laws of Delaware. The two corporations had the same officers, the same assets, and the same liabilities. The Minnesota corporation, however, had common stock of the par value of $100,00 a share, while the Delaware corporation had common stock of

no par value. For each share of stock in the Minnesota corporation the Delaware corporation issued 45 shares, making 86,310 in all.

The plan was consummated on July 30, 1928, at which time the stockholders of the Minnesota corporation had deposited all their stock certificates with one man designated to receive them. Thereupon the Delaware corporation issued to each of said stockholders a separate certificate for a proportional number of shares in the new corporation. The old stock was simultaneously surrendered for cancellation, and thereafter the Minnesota corporation was dissolved.

The stipulation of facts provides that the facts set out therein "are admitted by both parties * * * and that they include all the material facts." Among the stipulations so entered into, stipulation No. 12, relied upon by appellant, is as follows: "The Delaware corporation did not transfer or deliver any shares of its stock at any time to the Minnesota corporation. The Delaware corporation did not at any time transfer or deliver to the Minnesota corporation any transfers of legal title to shares or certificates of its stock or any rights to subscribe for or to receive such shares or certificates."

The arrangement between the two corporations for the consummation of the plan is disclosed in stipulations 7 and 8. At a meeting of the shareholders of the Minnesota corporation held on July 10, 1928, the following resolution was adopted:

"Be It Resolved, that the Board of Directors of the American Gas Machine Company, Inc., be and they hereby are authorized to sell, assign, transfer, set over and deliver all of the assets of every name, nature and description of said company to a corporation now being organized under the laws of the state of Delaware, and .likewise known as the American Gas Machine Company, Inc., a copy of the certificate of said Delaware corporation as filed in the office of the Secretary of State of the State of Delaware being hereto attached for reference, and said Board of Directors be and they hereby are authorized to accept from said Delaware corporation as and for full payment of all of the assets of said Minnesota corporation 86,310 shares of the common stock of said Delaware corporation, having no par value and to pro-rate and deliver to the holders of the common stock of the Minnesota corporation in accordance with their respective holdings, all of said common stock of said Delaware corporation. In assigning all of the assets of the Minnesota corporation to the Delaware corporation, the Delaware corporation shall assume all of the obligations of the Minnesota corporation. * * *

"Be it Further Resolved, that the Board of Directors of said corporation are authorized to cancel the common stock of said Minnesota corporation and to issue and deliver in place thereof 45 shares of the common stock of said Delaware corporation, no par value, for each and every one share of the common stock of said Minnesota corporation, par value $100."

On the following day the incorporators of the Delaware corporation met and adopted the following resolutions:

"Whereas, the * * * Minnesota corporation has offered to sell to this corporation all of its assets and properties of every kind, * * * this corporation to assume its debts and liabilities, in full payment for 86,310 shares of the common stock of this corporation, to be issued to said Minnesota corporation or its nominees. * * *

"Resolved, that the offer of said * * * Minnesota corporation to sell * * * be and it is hereby accepted.

"It is Further Resolved, that the officers authorized by the by-laws hereof be and they hereby are authorized and directed to issue and deliver in payment for said property in accordance with said offer, certificates fully paid, of the common capital stock of this corporation to the said American Gas Machine Company, Inc., a Minnesota corporation, or its nominees, for an aggregate of 86,310 shares, which shall include payment for the shares of stock subscribed by the signers of the certificate of incorporation, who are likewise holders of common stock in the said Minnesota corporation."

The contentions of the parties growing out of the facts stipulated present to this court for determination the question: Did the Minnesota corporation pass to its shareholders a right to receive the shares of stock of the Delaware corporation? If so, the tax was properly imposed and the judgment should be affirmed. If not, the tax was improper and there should be a reversal.

The appellant contends that the Minnesota corporation never possessed any "right to receive" the no-par value shares of the Delaware corporation; and that the "right to receive" moved directly from the Delaware corporation to the shareholders of the Minnesota corporation. This contention is based upon the provisions of the twelfth stipulation set out above. We are asked to ignore the resolutions included in the seventh and eighth stipulations, comprising the contract between the two corporations. But by the terms of the stipulation itself this cannot be done. By the terms of the contract the no-par value stock of the Delaware corporation was exchanged for the assets of the Minnesota corporation, and the shares were to be issued directly to the last-named corporation "or its nominees." It therefore did have under the contract the "right to receive" the shares in question with the privilege of directing them to go to its "nominees." The fact that it directed them to be issued to its own shareholders was in law a transfer of the right to receive. The stipulations construed together, as they must be, bear no other interpretation.

The contention of appellant is supported by certain federal decisions. Shreveport-El Dorado Pipe Line Company, Inc., v. McGrawl (C.C.A.5) 63 F.(2d) 202; MacLaughlin v. Westmoreland Coal Co. (C.C.A.3) 73 F.(2d) 1004; Minnesota Mining & Mfg. Co. v. Willcuts (D.C.) 2 F.Supp. 789. These cases were all decided prior to the decision of the Supreme Court in Raybestos-Manhattan v. United States, 296 U.S. 60, 56 S.Ct. 63, 64, 65, 80 L.Ed. 44, 102 A.L.R. 111, which we think is controlling in this case. Counsel for appellant, however, insist that the present case must be distinguished from the Raybestos Case, supra, in that the cited case involved a consolidation of two old corporations into a third new corporation, so that the shareholders received something different from that which they parted with. The distinction is not material. The language of the Supreme Court in the Raybestos Case is as applicable to the facts of this case as to that. In the present case, as in that, "the generating source of the right to receive the newly issued shares * * * was the conveyance * * * of the property" of the old corporation. "The new shares could not lawfully be issued to any other than the grantor corporation without its authority." By the terms of the contract in the instant case the new shares could only be issued to the grantor "or its nominees." The authority of the old corporation to designate "nominees" could not be lawfully "exercised for the benefit of third persons other than its own assenting stockholders." The agreement between the two corporations embodied in the resolutions set out in the seventh and eighth stipulations imposed the duty on the Delaware corporation "to issue the new shares upon receipt of the property, and at the same time made disposition to the stockholders of the * * * correlative right to receive the stock." It follows from the decision in the Raybestos Case that this "involved a taxable transfer." See, also, United States v. Vortex Cup Co. (C.C.A. 7) 84 F.(2d) 925.

For the foregoing reasons the judgment appealed from is affirmed.