**RAYBESTOS–MANHATTAN, Inc., v. UNITED STATES.***

No. 42580.

Court of Claims.

March 4, 1935.

* * *

134

Charles H. Le Fevre and Howard S. Le Roy, both of Washington, D. C. (S. R. Zimmerman, of Lancaster, Pa., on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The question in this case arises as a result of the issuance by plaintiff of a certain number of shares of its capital stock as a consideration for the business and assets of the Raybestos Company and the United States Asbestos Company. All the liabilities of each company were assumed by the plaintiff.

In connection with these transactions a merger was effected under the laws of New Jersey between plaintiff and the Manhattan Rubber Manufacturing Company, both being New Jersey corporations, by which plaintiff acquired all the assets of the Manhattan Company. No tax question growing out of the stock issued by plaintiff from that transaction is involved in this case.

Section 800, Schedule A (3), tit. 8, of the Revenue Act of 1926 (26 USCA § 901 and note, Schedule A (3), provides as follows:

"Sec. 800. On and after the expiration of thirty days after the enactment of this Act [March 28, 1926], there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title [chapter], or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax.

\* \* \* \* \* \* \* \*

"Schedule A—Stamp Taxes

\* \* \* \* \* \* \* \*

"(3) Sales or transfers of capital stock. On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share: Provided, That it is not intended by this title [chapter] to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, nor upon the delivery or transfer for such purpose of certificates so deposited, nor upon mere loans of stock nor upon the return of stock so loaned: Provided, further, That the tax shall not be imposed upon deliveries or transfers to a broker for sale, nor upon deliveries or transfers by a broker to a customer for whom and upon whose order he has purchased same, but such deliveries or trans-

fers shall be accompanied by a certificate setting forth the facts. * * *"

The important facts are not in dispute. The transactions in question involve a consolidation of the properties and businesses of the two corporations mentioned in the findings with the property and business of the plaintiff, a New Jersey corporation. While the tax in question does not depend upon the question whether a reorganization took place, the facts show that neither transaction was a reorganization of either of the corporations within itself. By separate letters of September 9, 1929, each corporation proposed to the plaintiff that it would "transfer, deliver, and assign all [its] assets, business, and goodwill, subject to its liabilities" to plaintiff in consideration of the issuance and delivery "to the company or upon its order" of certificates for a specified number of shares of stock of the plaintiff, which certificates it was further proposed should be issued directly to the holders of the common stock of the company making the offer upon the basis therein specified. Each offer, as made, was accepted by plaintiff and the transactions were carried out as agreed.

Schedule A (3), tit. 8, § 800 provides, in addition to the tax of five cents a share on an original issue, for a tax of two cents a share on all "transfers of legal title to shares or certificates of stock." It is not questioned that had the Raybestos Company and the United States Asbestos Company received the stock in question and carried out their clearly avowed purpose to distribute such stock by transfers to their stockholders, the payment of a tax of 2 cents a share here imposed would have been required. We think the liability for such a tax cannot be avoided by an arrangement for the issuance of such stock directly to the stockholders of the selling corporations. The statute imposes a tax upon not only "transfers of legal title to shares of stock" but also upon "other documents, instruments, matters, and things mentioned and described in schedule A," and schedule A requires that the tax be exacted where there has been a transfer of "rights to receive such shares or certificates."

The sole purpose of the section was to raise revenue and its language is very broad. Liability for the payment of the tax is imposed upon the transferor, the transferee, and the corporation whose stock is the subject of the transfer. The language of the section discloses a recognition that if the tax were confined to technical transfers of "legal title to shares" much of the revenue sought to be raised from this source would be lost through arrangements to accomplish the same end by one transaction instead of two. The tax was therefore laid upon the substance of the transaction rather than the form by making transfers of rights to receive such shares the equivalent of an actual transfer thereof. The exemptions allowed are definite and specific, and emphasize the broad purpose of the statute to impose the tax upon transactions such as are involved in this case. This was not a transaction whereby plaintiff acquired the stock of the stockholders of the Raybestos Company and the United States Asbestos Company, but it took over the assets of those companies in exchange for its stock. The selling corporations were the ones who had the right to receive the consideration (stock) for their assets and business sold to plaintiff and these corporations, when they transferred their assets to plaintiff, directed that the stock of the plaintiff be delivered "to the company or upon its order." They directed that the stock of plaintiff to be issued in exchange for the assets and business be issued and delivered to their stockholders. This, we think, was clearly a transfer of legal title to the shares and the transfer of their rights to receive such shares within the meaning of the statute in question. This was the substance of the transaction although it took the form of a direct issuance of the stock to the stockholders of the selling corporations. Plaintiff has cited a number of decisions in support of its argument that the tax was illegally exacted, which we have considered, but we think they are not controlling here and, therefore, we deem it unnecessary to discuss them in detail. It is also contended that the proceedings resulting in the formation and activities of plaintiff involved no sale or transfer of legal title to shares or certificates of stock, that merely the evidences of legal title to capital interests, or to shares not actually sold but retained by their owners, entered into the transaction, and they required exchanging of certificates to disclose properly the capital interest of each share-owner after the merger of separate businesses into a single enterprise; that the right to receive the certificates of plaintiff's no-par-value shares evidencing the individual capital interests when merged, given in replacement of certificates evidencing the same capital interests before the merger, belonged to the owners of such

capital interests, the individual stockholders, and to assume otherwise is to recognize shadow or semblance for substance or reality. We think, however, that there was an outright purchase by plaintiff of the business and assets of the two corporations mentioned and that such corporations were the ones legally entitled to receive plaintiff's shares in the transaction, and that, in substance, there was a transfer by them of their right to receive such shares to their stockholders. United States v. Brown Fence & Wire Co. (D. C. Northern Dist. Ohio) 9 F. Supp. 1008, January 31, 1935; C. C. H. Tax Service, vol. 3, par. 9144; P.-H. Tax Service, vol. 1, par. 869. Since the statute lays the tax upon the substance of the transaction, we are of opinion that the Commissioner correctly exacted the payment of the documentary stamp tax of 2 cents a share in question.

The petition must be dismissed, and it is so ordered.