## MIDDLE STATES PETROLEUM CORPORATION v. UNITED STATES.
### No. 42714.

Court of Claims.
May 3, 1937.

Thaddeus G. Benton, of New York City (Conrad E. Cooper, of Tulsa, Okl., on the briefs), for plaintiff.

Guy Patten, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

On January 2, 1930, the plaintiff issued 299,954 shares of Class A stock and 895,529 shares of Class B stock to certain voting trustees pursuant to an agreement made with the stockholders of a group of insolvent corporations engaged in the production and sale of crude oil for the purpose of a reorganization. The Commissioner of Internal Revenue exacted a stamp tax of 2 cents a share on the issuance of this stock under the provisions of Schedule A, par. 3, of section 800 of the Revenue Act of 1926 (44 Stat. 99, 101).

In 1929, the Middle States Petroleum Corporation, United Oil Producers Corporation, and Oil Lease Development Company, Delaware corporations, were insolvent and in receivership in the District Court of the United States for the Southern District of New York. The Middle States Petroleum Corporation was a holding company having interest through stock ownership in fifty-three subsidiaries, including the other corporations above named. All were engaged in the production and sale of crude oil. The principal assets of the three insolvent corporations were held as security for the payment of their outstanding notes and bonds which were in default and there were numerous other claims against them.

In this state of affairs the secured creditors, the holders of claims against these corporations, and the stockholders of the holding company appointed a reorganization committee, and on July 29, 1929, a "Plan and Agreement" was executed by and between the committee and the secured note and bond holders, claimants, and stockholders, in which it was agreed as stated in Finding 3.

Among other things, this agreement provided in substance with reference to the stock to be issued: (a) That the securities, claims, and stock would be deposited with, and title thereto by transfer be vested in, the committee or its nominees; (b) that the committee, or its nominees, would acquire the assets of the insolvent corporations at judicial sales in suits brought to foreclose the mortgages securing the assigned notes and bonds and in suits on the other claims, and would satisfy the purchase price with said notes, bonds, and claims; (c) that the assets so acquired would be transferred to a new corporation to be formed, which would issue for said assets its no-par value common stock, which the depositing note and bond holders, claimants, and stockholders would be entitled to receive on completion of the reorganization, each a certain designated number of the shares for each $100.00 principal amount of securities contributed as aforesaid; (d) that the contributing, or depositing, security holders, claimants, and stockholders consented and agreed that the stock should be issued to certain persons designated as "Voting Trustees."

In the respective arguments of the parties it is agreed that the issuance of the stock to the voting trustees was for the purpose of vesting control of the new corporation in what was regarded as responsible hands for ten years and to thus pre-

vent a return of conditions which had brought about the receivership of the old corporations.

It is apparent that under this agreement the reorganization committee acquired legal title. to the secured notes and bonds, claims, and stock which were turned over to it.

The reorganization committee, having under these proceedings acquired legal title to and control of nearly all the outstanding notes and bonds, claims, and stock of the various corporations interested, caused foreclosure proceedings to be had upon the mortgages securing the notes and bonds and by judgments obtained under the agreement bid in the assets of the insolvent corporations in the name of its nominees at judicial sales and. used the securities and claims in its control to satisfy the purchase price of the assets, after which its nominee by direction of the committee caused legal title to all of the assets to be vested in plaintiff, the new corporation which was formed to receive the same under the agreement. Thereupon plaintiff issued the 1,195,483 shares of stock involved herein to the voting trustees.

Further agreements were executed in completing the reorganization in which, among other things, the plaintiff agreed that, in consideration of the vesting in it of the assets purchased by said bidders, it would execute and deliver $2,500,000 in bonds to the persons entitled thereto under the agreement of reorganization and execute a voting trust agreement, the particulars of which are set out in finding 6. A final agreement dated January 1, 1930, was made between the voting trustees and the plaintiff which provided, among other things, "The several persons beneficially interested in the shares of stock of the company vested in the Voting Trustees as above recited, by accepting the Trust Certificates issued hereunder, become parties to this Agreement and ratify, approve, and confirm the action of the Reorganization Committee in causing the stock of the Company to be issued to the Voting Trustees as above recited."

The execution of these agreements completely carried out the original plan and agreement of July 29, 1929.

The voting trust agreement provided that the voting trustees "shall * * * possess and shall be entitled * * * to exercise all of the rights and powers of absolute owners of such stock, including the right to vote and consent for every purpose, it being expressly stipulated that no voting right passes to the holder of this Trust Certificate by implication or otherwise."

The issue in the case is whether under the facts as found the issuance of stock to the voting trustees by the plaintiff constituted a taxable transfer under the provisions of Schedule A, par. 3, of section 800 of the Revenue Act of 1926 (44 Stat. 99, 101). The contention made by plaintiff is that the voting trustees were the first and only persons entitled to receive plaintiff's stock and that there was. accordingly no transfer of stock to them within the meaning of the statute when plaintiff issued the stock in accordance with the agreement. The argument is that the reorganization agreement provided for the issuance of the stock directly to the voting trustees instead of to those who furnished the consideration for the stock and that the statute does not apply to the original issue by a corporation of its stock to voting trustees or to a nominee. The questions of law involved in the case have been the subject of much controversy and opposing decisions have been rendered upon them. The law, however, is now settled. by a recent decision of the Supreme Court in the case of Founders General Corporation v. James J. Hoey, Collector, 57 S.Ct. 457, 458, 81 L.Ed. ——, and two other cases decided March 1, 1937. In all of these cases the transfer was held taxable. The Supreme Court said the three cases present in the main the same question which was: "When, at the instance of one entitled to receive stock, the certificates therefor are, at his request and for his convenience, issued by the corporation in the name of a nominee who receives no beneficial interest therein, does the transaction involve a transfer by the beneficial owner requiring a documentary stamp pursuant to section 800, Schedule A (3) of. the Revenue Act of 1926, February 26, 1926, c. 27, Title 8, 44 Stat. 99, 101?"

The issue in this case upon the facts, found presents the same question which the Supreme Court answers in the affirmative.

In plaintiff's reply brief it is said: "The parties to the agreement did not consent to the issue of stock to voting trustees—they required same as a condition to their execution of the reorganization agreement." But it cannot be said that these

parties did not consent to what they had agreed should be done.

The Supreme Court further said in the cited case that the fact that the transaction did not involve the transfer of a beneficial interest was immaterial and that the tax was exacted because the "right to receive the certificate" was transferred; also in substance that the grant of authority to issue the stock in the names of the nominees was "a transfer of 'the right to receive' within the meaning of the act."

It follows that the Commissioner correctly exacted the stamp tax in controversy and that plaintiff's petition must be dismissed. It is so ordered.