## TUBIZE CHATILLON CORPORATION v. UNITED STATES.

### No. 43515.

Court of Claims.
May 31, 1938.

Valentine B. Havens, of New York City (Charles B. McInnis and Olcott, Paul, Havens & Wandless, all of New York City, on the brief), for plaintiff.

Guy Patten, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff corporation paid the stamp taxes involved in this case. A refund claim was timely filed. The Commissioner of Internal Revenue denied the claim and this suit was brought within the statutory period provided for so doing.

The facts have been stipulated. Insofar as pertinent in an opinion they are as follows:

The Tubize Artificial Silk Company of America and the American Chatillon Corporation were Delaware corporations engaged in the manufacture and sale of commodities of a somewhat similar character. The plaintiff corporation, also organized under the laws of Delaware, was organized and capitalized for the purpose of effecting a merger of the first two corporations.

The capital stock of the Tubize Artificial Silk Company and the Chatillon Corporation was held under express agreements by voting trustees. The depositing owners of the stock possessed voting trust certificates evidencing their individual interest in the stock transferred to the voting trustees.

The agreement of merger and consolidation under the laws of Delaware enabled the plaintiff when it received its charter to acquire all the assets of the two corporations to be merged, and the plaintiff was to and did issue to the voting trustees one' share of preferred stock for each share of preferred stock of the old corporation, one share of common stock for each share of common stock of the American Chatillon Corporation, and six shares of common stock for each share of common stock of the

Tubize Artificial Silk Company. A total of 834,715 shares of new stock was issued.

Prior to the date of the agreement of merger and consolidation, and pending its execution, the voting trustees who held the stock of the two corporations involved mailed to each holder of voting trust certificates a formal and explanatory "Proxy and Authorization" empowering the voting trustees to consummate the merger agreement if they assented to the same.

The voting trustees received in due course authority to enter into the merger agreement, and as a result a new or supplemental agreement was entered into between the plaintiff, the old group of voting trustees, and the owners of voting trust certificates in the two old corporations to be merged, whereby the stock to be issued by the plaintiff corporation in lieu of stock surrendered by the old stockholders was to be delivered to the new voting trustees, and it was so delivered.

The Commissioner of Internal Revenue imposed a tax of two cents a share on the transfer by the owners of voting trust certificates of the old corporations of 'their right to receive the 834,715 shares of new stock delivered in accord with the voting trustees' agreement to the voting trustees provided for in the supplemental voting trust agreement. The Commissioner justified his action under Schedule A–3 of Section 800, Title 8, of the Revenue Act of 1926, 26 U.S.C.A. § 902 and note, a copy of which is appended to this opinion. The amount involved and sued for is $16,694.30.

The plaintiff's contention is predicated upon the provisions of the voting trust agreement. It is argued, as it was in some cases to be hereafter cited, that this agreement transferred from the owners of the stock a title and possessory right equal in extent to the powers possessed by the absolute owners, and hence the right to receive the new stock resided in the voting trust trustees.

It is also asserted that the procurement of proxies by the voting trust trustees conferring authority to enter into the merger agreement was nothing more than a precautionary proceeding, not in any sense requisite to the exercise of an authority previously conferred and at the time existing. In other words, it is insisted that the trustees possessed plenary power and authority to effect the merger and exchange of stock under the voting trust agreement.

To analyze and determine the legal consequences, as well as the scope and meaning of the voting trust agreement by citing its provisions, is, we think, unnecessary. This agreement is the usual one appearing in cases of a similar nature, and assuredly it may not be held that the owners of the stock deposited with the trustees surrendered their beneficial interest in the same.

The right to receive, the substantial factor in transactions of the kind involved in this case, resided primarily in the owners of the stock, and thereafter in the owners of voting trust certificates. The legal right to receive, though postponed by intervening events, was attached to and remained with the original owners, and was we think transferred to the voting trust trustees.

In addition to what has been said, the execution of proxies by the owners of voting trust certificates to the voting trust trustees evidenced a transfer of the right to receive which they possessed. This act in its entirety clearly discloses the extent of the authority conferred upon the trustees by the voting trust agreement. The trustees were unwilling to proceed without it, and the legal significance which follows is the fact that the parties to the proxies participated in the transaction and gave it their approval. It was their construction of the power and authority conferred by the original voting trust agreement.

The following cases preclude the plaintiff's right to recover; the principles of law established by them are manifest and familiar. The plaintiff, we think, has failed to distinguish its case from what the Supreme Court decided with respect to transactions of a similar character, and in our opinion are conclusive with respect to issues involved herein. Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Middle States Petroleum Corporation v. United States, 18 F.Supp. 945, 85 Ct.Cl. 232; Founders General Corporation v. Hoey, United States v. A. B. Leach & Co., United States v. Automatic Washer Co., 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639.

Plaintiff's petition is dismissed. It is so ordered.

## APPENDIX

"Sec. 800 of the Revenue Act of 1926, as amended 26 U.S.C.A. § 900 and note:

"On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax." [44 Stat. 99].

Schedule A–3 (Act of 1926 as Amended, 26 U.S.C.A. § 902 and note):

"Sales and Transfers of Stock

"*Capital stock, sales or transfers:* On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share: * * *."