**UNITED STATES INDUSTRIAL CHEMICALS, Inc. v. JOHNSON, Collector of Internal Revenue.**

United States District Court
S. D. New York.

Aug. 22, 1949.

Shearman & Sterling & Wright, New York City (Charles Goodwin, Jr., and Paul R. Russell, Washington, D. C., of counsel), for plaintiff.

John F. X. McGohey, United States Atty., James A. Devlin, Asst. U. S. Atty., New York City, for defendant.

RIFKIND, District Judge.

This suit for the refund of stock transfer tax in the amount of $15,107.65, paid by the plaintiff corporation, was tried to the court on a stipulation of facts. It presents the following question: on the merger of a parent corporation with and into its subsidiary, the stock of which is wholly owned by the parent, where the outstanding capital stock of the parent is converted in accordance with the agreement of merger so as to become the capital stock of the subsidiary (which became the continuing corporation), is such a conversion subject to the stock transfer tax imposed by § 1802(b) of the Internal Revenue Code, 26 U.S.C.A. § 1802(b), in respect of the shares converted?

The relevant facts briefly are as follows: U. S. Industrial Alcohol Co. (hereinafter referred to as Alcohol) was a West Virginia corporation and owned all of the capital stock, 100 shares, of U. S. Industrial Chemical, Inc. (hereinafter referred to as Chemical) a Delaware corporation. On July 16, 1943, the two corporations were

merged in accordance with an agreement of merger. Upon consummation of the merger, the entire capital stock of Chemical, held by Alcohol, was extinguished and cancelled. The holders of the capital stock of Alcohol were treated as stockholders of Chemical, were allowed to vote their stock and to receive their pro rata share of dividends. They were authorized, but not required, to exchange their shares for shares of capital stock of Chemical, the continuing corporation. To the assets of the continuing corporation the parent, Alcohol, contributed 7½% of the total and Chemical, the subsidiary, contributed the remainder. Prior to the merger, Alcohol had outstanding 376,836 shares of its capital stock in the hands of the stockholders and 14,402 shares in its treasury. The stamp tax imposed by § 1802(a) upon the original issue of shares of stock was paid at the time of merger by the continuing corporation and amounted to $24,739.71, applicable to the entire issue of its capital stock. The Commissioner of Internal Revenue in October, 1943, assessed a transfer tax under § 1802(b) on the number of shares of stock of Alcohol which had been, by that time, physically exchanged for shares of stock of Chemical. In January, 1944, the Commissioner made another assessment at the same rate upon additional shares of stock of Alcohol which had since October, 1943, been exchanged for shares of Chemical. Plaintiff paid the assessments and filed timely claims for refunds, which were rejected.

Section 1802(b) of the Internal Revenue Code, 26 U.S.C.A. § 1802(b), provides:

"On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued) 5 cents and where such shares or certificates are without par or face value, the tax shall be 5 cents on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other organization share, as the case may be): * * *".

It is the contention of plaintiff that no transfer of stock and no transfer of the right to receive stock has occurred and that the taxable event prescribed by § 1802(b) is therefore absent. Plaintiff distinguishes this case from cases involving the horizontal merger of stranger corporations where stock is issued by the continuing corporation in exchange for the assets of the merged corporation. American Processing & Sales Co. v. Campbell, 7 Cir., 1947, 164 F.2d 918, reversing D.C.N.D.Ill., 1946, 69 F.Supp. 53, certiorari denied, 1948, 333 U.S. 844, 68 S.Ct. 661, 92 L.Ed. 1127. It also differentiates the merger of two sister subsidiaries of a common parent. United States v. Niagara Hudson Power Corp., D.C.S.D.N.Y., 1944, 53 F.Supp. 796.

Emphasis is laid on the fact that the facts of the instant case present a vertical merger by a parent with and into its wholly owned subsidiary; that the parent contributed but 7½% of the assets of the continuing corporation; and that the relation of the stockholders toward the aggregate of assets of the continuing corporation is in no material degree different from what it was before the merger.

Confessedly, no authority squarely supports the plaintiff's position. Whether the existing authorities are at odds with its position will be considered hereinafter. But first the substance of the transaction, denuded of the cloak provided by the form of the merger, must be examined. For this purpose, I shall assume one fact more favorable to the plaintiff than the stipulation warrants; I shall assume that the parent was a pure holding company and that it contributed no assets at all to the continuing corporation.

By means of the merger the elimination of one corporation was accomplished.

The stockholders of the parent are now stockholders of the subsidiary. The assets remain where they were. The distance between the beneficial owners and these assets has been shortened. The statutes of West Virginia and Delaware allow this change to occur by a process called merger. Since the parent owned all the stock of the subsidiary, the same results could have been achieved had the parent distributed to its stockholders, out of its treasury, the shares of the subsidiary, and then gone into dissolution. Because the subsidiary's stock consisted of but 100 shares, the parent would first have had to cause the subsidiary to issue approximately 375,000 shares in exchange for the 100 shares. That would have subjected the subsidiary to an original issue stamp tax under § 1802(a). Then, upon distribution of those shares by the parent to its stockholders, a transfer of stock (and not of the right to receive stock) would surely have been accomplished, subject to the stamp tax imposed by § 1802(b).

In substance, this is what has occurred in the instant case. On July 15, 1943 Alcohol was the owner of all the stock of Chemical. After July 15, 1943 the stockholders of Alcohol were the owners of all the stock of Chemical and Alcohol had vanished. By what means did the ownership of Chemical stock pass out of Alcohol and enter into the stockholders of Alcohol? Manifestly, a transfer occurred. Since the transfer did occur, the taxable event specified in § 1802(b) took place. That statute is not to be "read narrowly". Raybestos-Manhattan, Inc. v. United States, 1935, 296 U.S. 60, 62, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, affirming 1935, 10 F. Supp. 130, 80 Ct.Cl. 809.

The cases, distinguished by plaintiff and relied upon by defendant, are not entirely dispositive. In Raybestos-Manhattan Inc. v. United States, supra, pursuant to a plan of consolidation of three companies, two of the companies conveyed their assets to a newly-formed corporation, the stock of which was issued directly to the stockholders of the two conveying companies. The new corporation paid both issue and transfer taxes, and was denied refund of the latter. Specifically not passed upon, however, was the question whether on a statutory merger of the new corporation with the third company (completing the consolidation), the new corporation's stock being transferred directly to stockholders of the third company, a transfer tax would be due. A closer case is American Processing & Sales Co. v. Campbell, supra, where two unaffiliated companies merged, the one into the other, and stock of the survivor was issued directly to stockholders of the merged company. A transfer tax was there upheld. Plaintiff insists that the case is distinguishable in that the stockholders of the merged company received an interest they did not have before; i. e., a property interest in the aggregate assets of the combined companies. The same distinction is sought to be drawn with reference to United States v. Niagara Hudson Power Corp., supra, where two wholly owned subsidiaries of a common parent were merged, the assets of subsidiary B being conveyed to subsidiary A, and the stock of subsidiary B being automatically converted into stock of subsidiary A, and as such held and owned by the parent. It is said that subsidiary A acquired a new interest (the assets of subsidiary B) by the merger. The distinction is weak, for it was the parent, not subsidiary A, which, as transferee of the new stock, was in a position analogous to that of the stockholders in the other cases, and the parent acquired thereby no new interest in the assets of subsidiary B. Nevertheless the transfer tax was imposed. These cases show a disposition to construe the statute broadly, to examine the substance of the transaction rather than its form. They point in the direction of tax liability.

Plaintiff makes one point which need not long detain us. It suggests that, in effect, this transaction is being subjected to double taxation, once under the original issue tax and again under the transfer tax, and that such double taxation should not be implied where the Congress has not made such a purpose manifest. This is not the case. Normally two taxes are paid, one upon issue, another upon transfer. Had Chemical previously issued enough shares of

stock so as to permit direct pro rata distribution to stockholders of Alcohol, it is true that no original issue stamp would have been required in connection with the merger, but such a tax would have been paid at the time of original issue. Cf. Emporium Capwell Co. v. Anglim, 9 Cir., 1944, 140 F.2d 224, certiorari denied 1944, 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582.

Indeed, the Emporium case, in its underlying facts, is indistinguishable from that here presented. There the parent holding company, pursuant to a plan of merger, distributed the stock of its wholly owned subsidiary to its own stockholders, and was then extinguished. An issue tax had previously been paid on the subsidiary's stock. A transfer tax was held payable on the merger.

The two taxes attach to two different events. One does not preclude the other, even if they occur simultaneously.

Judgment for the defendant.