**AMERICAN MAIL LINE, Limited, v. UNITED STATES.**

No. 49020.

United States Court of Claims.

Decided Dec. 4, 1951.

James A. Cosgrove, Washington, D. C., for plaintiff.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe and Lee A. Jackson, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The American Mail Line Ltd., a steamship company, hereinafter referred to as the Nevada corporation, was incorporated under the laws of the State of Nevada on October 17, 1930, with an authorized capital consisting of 200,000 shares of no par value stock, of which 152,939 shares were outstanding on November 11, 1947, the date concerned in this proceeding.

In June of 1947 the officers of the Nevada corporation decided that it would be advantageous to transfer the corporate domicile from the State of Nevada to the State of Delaware. As a result, the officers of the Nevada corporation on June 25, 1947, organized and incorporated under Delaware law a new corporation also known as American Mail Line Ltd., hereinafter referred to as the Delaware corporation, solely to effect this change in domicile. The Delaware corporation had the same authorized capital as the Nevada corporation, 200,000 shares of no par value stock, but only 60 qualifying shares were issued, and all of these were owned by the Nevada corporation. The officers and directors of both corporations were identical.

In order to carry out the change of domicile, the respective boards of directors of both corporations, on July 23, 1947, entered into a Merger Agreement which became effective on November 11, 1947. This agreement, which fulfilled the requirements of the Nevada and Delaware corporation laws, provided that all the property, real, personal, and mixed, of both corporations, and all the debts and liabilities of both corporations, were to be vested in the Delaware corporation by operation of law. Also, the agreement directed the shareholders of the Nevada corporation to surrender their Nevada stock certificates representing the 152,939 shares outstanding directly to the Delaware corporation, and in return the Delaware corporation was to issue directly to the shareholders of the Nevada corporation, on a share for share basis, stock certificates of the Delaware corporation. The agreement further provided that the 60 shares of the Delaware corporation stock held by the Nevada corporation were to be surrendered to the Delaware corporation for cancellation and reissuance. After the merger became effective, the books and records of the Nevada corporation were continued as the books and records of the Delaware corporation.

On October 31, 1947, the Delaware corporation, plaintiff in this action, requested of the Commissioner of Internal Revenue a ruling concerning the applicability of the stamp tax provisions contained in sections 1802 (a) and (b) of the Internal Revenue Code to the stock transactions which arose out of the merger. The Commissioner found, by a ruling dated November 20, 1947, that plaintiff must pay both the stamp tax of three cents a share on the original issue of 152,939 shares of stock by the Delaware corporation, and the stamp tax of five cents a share on an implied transfer of these 152,939 shares of the Delaware corporation stock by the Nevada corporation to its shareholders. By a letter dated June 23, 1948, the Seattle, Washington, Revenue Agent established plaintiff's stamp tax liability in the amount of $12,235.12, of which $4,588.17 represented the tax on the original issuance of the Delaware corporation stock, and $7,646.95 represented the tax on the implied transfer of these shares. On the same day, June 23, plaintiff purchased and had cancelled documentary tax stamps in the amount of $12,235.12.

Plaintiff, on July 21, 1948, filed in the office of the Collector for the District of Washington a claim for refund of the $7,646.95 paid as a tax on the implied trans-

fer of the Delaware corporation shares by the Nevada corporation to its shareholders, but plaintiff did not at that time, nor does plaintiff now, dispute the imposition of the three-cent stamp tax on the original issuance of these shares. This claim was rejected by the Commissioner of Internal Revenue on October 29, 1948, on the ground that in a merger the transfer by the merged corporation to its shareholders of the right to receive shares in the surviving corporation is an implied transfer and as such, subject to the stock transfer tax.

It is provided in 44 Stat. 101 (1926), as amended, 26 U.S.C. (Supp. IV) § 1800 *et seq.*, as follows:

"§ 1800. Imposition of tax

"There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive, or for or in respect of the vallum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, the several taxes specified in such sections.

\* \* \* \* \* \*

"§ 1802. \* \* \* (b) Sales and transfers. On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subsection (a), or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued) 5 cents and where such shares or certificates are without par or face value, the tax shall be 5 cents on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other

organization share, as the case may be): \* \* \*."

It is plaintiff's position that the surrender by the stockholders of the Nevada corporation of their stock certificates *directly* to the Delaware corporation in exchange for certificates of the Delaware corporation, on a share-for-share basis, when done pursuant to a statutory merger having as its sole purpose a change of corporate domicile, is not a taxable transfer within the meaning and intent of § 1802 (b). Plaintiff maintains that the terms "transfer," "sale," and "delivery," all presuppose a transaction between two or more parties, yet in a merger only one party exists, the shareholder, who merely surrenders, rather than transfers, his stock certificate for the sole purpose of having it corrected to reflect the result of the merger.

To support this position plaintiff relies upon the case of Shreveport-El Dorado Pipe Line Co. v. McGrawl, 5 Cir., 63 F.2d 202. In addition, plaintiff urges that the decision in Raybestos-Manhattan, Inc., v. United States, 10 F.Supp. 130, 80 Ct.Cl. 809, affirmed 296 U.S. 60, 61, 56 S.Ct. 63, 80 L.Ed. 44, is not binding as to this case because of the difference in the factual situations. On the other hand defendant relies upon the Raybestos decision and upon the Bureau of Internal Revenue's ruling in M. T. 3, 1942–2 Cum.Bull. 257, as establishing the taxability of a merger transaction. The problem posed by these two cases, by the instant case, and by others to which we will refer, is whether in the case of a merger, reorganization, or consolidation of two or more corporations, the transfer of capital stock of the surviving corporation to the shareholders of the merged corporation involves one nontaxable transfer of stock, or two transfers, the second being taxable. In transactions of these types the substantial factor involved, from the shareholder's point of view, is the right to receive stock, Tubize Chatillon Corp. v. United States, 23 F.Supp. 454, 87 Ct.Cl. 390, 402; and although certain factual and technical differences do exist between mergers, consolidations, and reorganizations of corporations, they all present the common problem as to whether the share-

holder's right to receive involves a taxable transfer. Therefore, in determining the issue of taxability, we will disregard attempts to create artificial distinctions between transfers arising out of reorganizations, mergers, and even attempts to distinguish various types of mergers, such as horizontal mergers of stranger corporations from vertical mergers of parent and subsidiary corporations.

█ In the Shreveport-El Dorado case, supra, a Delaware corporation with an authorized and issued capital stock of 1,000,000 shares of $10 par value each, doing business in Louisiana, decided to change its corporate domicile to Louisiana. A Louisiana corporation was organized with an authorized capital of 1,000,000 no par value shares. Then, by a resolution of its shareholders, the Delaware corporation was authorized to exchange its assets and liabilities for the entire issue of capital stock of the Louisiana corporation. The resolution further provided that the Louisiana corporation's stock when issued should be issued share for share directly to the stockholders of the Delaware corporation. In this case, and in the similar case of Westmoreland Coal Co. v. McLaughlin, D.C., 8 F.Supp. 963, affirmed, 3 Cir., 73 F.2d 1004, the courts regarded the transfer of the stock of the surviving corporation to the shareholders of the merged corporation as involving only one step or transfer, which step was not taxable. These decisions are based on the reasoning that it is competent for a merging or retiring corporation, upon obtaining the consent of its shareholders to deliver its assets to another corporation, and to provide that the consideration received for the assets be paid directly to the shareholders, rather than be paid to the merged corporation for distribution to the shareholders. Therefore the right to receive never vested in the corporation, so that there was no sale or transfer by the merged corporation of the surviving corporation's stock to the shareholders of the merged corporation. There was but one movement, that being a nontaxable transfer directly from the surviving corporation to the shareholders in the merged corporation. Accord, Minnesota Mining & Mfg. Co. v. Willcuts, D.C., 2 F.Supp. 789. In the Shreveport case, supra, 63 F.2d at pages 202, 204, the court stated that the statute: "* * * covers only acts or transactions by which an interest in a corporation or its property, or a right to acquire such interest, passes from one owner to another, and does not apply to acts or transactions which are not means of effecting a change of ownership or of enabling the accomplishment of that result. There is no passage or transfer of the title or ownership of a corporate interest where, on the exchange of stock in one corporation for stock in another in carrying out a plan of reorganization, the holder, after the exchange, has substantially the same interest which he had before."

A contrary conclusion was reached in the Raybestos-Manhattan case, supra, although a different procedure was used to effect the merger. Three asbestos manufacturing companies elected to consolidate their facilities, and formed a fourth company for that purpose. The new company and one of the original companies then merged pursuant to New Jersey law, the surviving corporation issuing shares of its stock ratably and *directly* to the shareholders of the merged corporation. The surviving corporation completed the consolidation with the two remaining companies by executing bills of sale and other necessary instruments, whereby it issued shares of its stock ratably and *directly* to the shareholders of the consolidated corporations. The Commissioner of Internal Revenue then assessed the transfer stamp tax against the new corporation on stock issued by the new corporation pursuant to the bills of sale, directly to shareholders of the two consolidated corporations. However, it is important to note that no attempt was made to assess the transfer tax on the shares issued pursuant to the Merger Agreement directly to stockholders of the merged corporation. The Supreme Court, in affirming this court's decision, recognized that although the transaction took the form of a direct issuance of the stock to the shareholders of the selling corporation, the substance of the transaction involved a two-step transfer, the second step of which was taxable, that is, the transfer from the non-surviving corporation to its shareholders. The Supreme

Court stated, in 296 U.S. 60, 63, 56 S.Ct. 63, 64:

"The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another.

\*    \*    \*    \*    \*    \*

"\*  \*  \* In the present case the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated. The new shares could not lawfully be issued to any other than the grantor corporation without its authority, and that authority could not be exercised for the benefit of third persons other than its own assenting stockholders. The consolidation agreement thus imposed the duty on petitioner to issue the new shares upon receipt of the property, and at the same time made disposition to the stockholders of the two corporations of the correlative right to receive the stock.

"We think that this effective disposition of the right to receive the stock involved a taxable transfer quite as much as if the several legal relationships of the parties had been established at different times and by separate documents. It is not doubted that there would have been a taxable transfer if each corporation had conveyed its property to petitioner in exchange for its shares of stock to be issued as the grantor might direct, and had later ordered the certificates to be issued to its stockholders. The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements. \*  \*"

This conclusion, as we understand it, was simply a recognition of the general rule of corporation law that the corporation and the stockholders who compose it, are separate and distinct. When the transaction was consummated the non-surviving corporation, not its stockholders, had the right to receive the consideration consisting of stock in the surviving corporation, and when it passed this right on to its stockholders, a transfer took place which was taxable. The essence of a transfer is a change of ownership terminating rights and other relations in one and creating them in another. Niagara Hudson Power Corp. v. Hoey, 2 Cir., 117 F.2d 414, 416, certiorari denied 313 U.S. 571, 61 S.Ct. 958, 85 L.Ed. 1529.

As we have previously pointed out neither this court nor the Supreme Court had before it in the Raybestos-Manhattan case the question as to taxability of the shares transferred pursuant to the merger agreement. However, this question has arisen in several cases subsequent to the Raybestos and Shreveport-El Dorado cases, and prior to the instant case. The language of the Supreme Court in the Raybestos-Manhattan case, quoted above, and in Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, affirming 2 Cir., 84 F.2d 976, has been construed to be sufficiently broad to render taxable the issuance of shares by a surviving corporation directly to shareholders of a merged corporation.

In United States v. Vortex Cup Co., 84 F.2d 925, the Court of Appeals for the Seventh Circuit had before it a case similar to the instant case. A Delaware corporation was formed to take over the assets of an Illinois corporation, solely for the purpose of changing the corporate domicile. The corporations then merged and stock in the Delaware corporation was issued directly to shareholders of the Illinois corporation. The surviving Delaware corporation argued that there had been no real transfer of corporate interest within the meaning of the statute, but merely an exchange of ownership in the old corporation for ownership in the new corporation, and sought to rely upon the Shreveport-El Dorado case. In refusing to follow the Shreveport case, the court pointed out that although the Raybestos case had presented a different factual situation, the language of the Raybestos decision was not to be construed so narrowly as not to control a true merger transaction. In addition, the court held, and we think rightly so, that although the purpose of the merger is only to effect a change in domicile, it cannot be said that ownership in the new corporation is so nearly identical with own-

ership in the old corporation as to involve absolutely no change in the shareholder's corporate interest. Ownership of stock in a Delaware corporation gives the shareholder inherently different rights and powers than ownership of shares in an Illinois corporation, although the stock represents a share of exactly the same assets.

Recognition of the two-step transfer and of the taxable consequences of the second step was made in the following cases, each of which involves a slightly different type of transfer: American Gas Machine Co., Inc., v. Willcuts, 8 Cir., 87 F.2d 924, 925; Standard Oil Co. of California v. United States, 9 Cir., 90 F.2d 571, certiorari denied 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 573; Emporium Capwell Co. v. Anglim, D.C., 48 F.Supp. 292, affirmed 9 Cir., 140 F.2d 224, certiorari denied 322 U.S. 752, 64 S. Ct. 1263, 88 L.Ed. 1582; American Processing & Sales Co. v. Campbell, 7 Cir., 164 F.2d 918, reversing D.C., 69 F.Supp. 53, certiorari denied 333 U.S. 844, 68 S.Ct. 661, 92 L.Ed. 1127; United States Industrial Chemicals, Inc., v. Johnson, D.C., 85 F.Supp. 639, affirmed 2 Cir., 181 F.2d 413. Judge Minton in the American Processing & Sales Co. case, supra, 164 F.2d 920, made the following statement which we feel is equally applicable to the instant situation: "Whether the metamorphosis of these two corporations into one survivor holding all the assets of the former corporations and issuing its stock representing these assets to the stockholders of the non-surviving corporation, is in accordance with a private agreement, as in the second aspect of the Raybestos-Manhattan case, or whether such metamorphosis is by means of a merger procedure prescribed by statute, as in our case, the result is the same. Forms are not important. It is the end result that counts. The end result is the same in both cases. The one corporation winds up with all the assets, and the old stockholders of the other corporations wind up with the stock of this surviving corporation. We cannot believe that Congress intended to tax one result and not the other. The whole rationale of the Raybestos-Manhattan case is at war with such distinctions."

At first glance it would appear that under existing Treasury Regulations stock transfers resulting from a merger are not taxable. Treasury Regulation 71, sec. 113.-34 provides:

" * * * the following are examples of transactions not subject to the tax:

"(h) In a consolidation of corporations, the surrender of stock of any of the consolidating corporations in exchange for stock of the new or consolidated corporation.

"(i) In a merger of corporations the surrender of stock of both the merging and continuing corporations in exchange for stock of the continuing corporation."

However, the surrender and exchange of stock referred to in this regulation is the surrender involved in the first of the two steps. It is the surrender by the merging corporation of its stock in exchange for the stock of the surviving corporation. As we have previously stated, the right to receive the shares of the surviving corporation vests in the merged corporations either expressly where the agreement so provides, or impliedly vests where the surviving corporation issues the shares directly to the shareholders of the non-surviving corporation. This transfer is not subject to the transfer tax. While such a transfer exists in the instant case, the second transfer or step also exists, that is, the implied transfer of the right to receive by the non-surviving corporation to its shareholders. Under the rationale of the cases previously mentioned, this step is taxable. Emporium Capwell Co. v. Anglim, supra.

Accordingly, we conclude that the transfer of shares arising out of the merger of the Nevada and Delaware corporations is a taxable transfer within the meaning of section 1802 (b). Even though in form the transfer was carried out in one step, the substance of the transfer constituted in reality two steps. The new corporation was formed, and the assets of the old corporation were transferred to it, for purposes which were advantageous to the stockholders of the corporation; and, as was stated in United States Industrial Chemicals, Inc., v. Johnson, supra, 181 F.2d at pages 413, 415:

"When the tax gatherer comes around following dealings with these artificial creations the people who have set them up for their own convenience can hardly say that it was all just for fun and the dealings should not subject them to taxation. If there are to be dealings in these multiple forms of incorporation the tax consequences will have to follow."

The payment of the stamp tax of five cents per share was properly exacted in this case and therefore the petition must be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.